**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 08-68 |
| | ) | Civil No. 11-627 |
| | ) | Judge Nora Barry Fischer |
| TERRANCE HOWARD WELLS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("motion") filed by *pro se* Defendant Terrance Howard Wells. (Docket No. 144). Defendant claims that his sentence should be vacated due to "mitigating circumstances" and the application of the Fair Sentencing Act of 2010 ("FSA"). (Docket Nos. 145, 152). He also requests an evidentiary hearing. (*Id.*). The Government opposes Defendant's motion, arguing that he waived his right to file a motion to vacate under 28 U.S.C. § 2255 in a plea agreement with the Government, he did not meet the 120 day deadline to amend his arguments, his claims fail as a matter of law, and he is not entitled to an evidentiary hearing. (Docket No. 163). Based on the following, Defendant's motion to vacate [144] is DENIED.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 5, 2008, a federal grand jury returned a six-count indictment against Defendant and his co-defendant Robert L. Pegues, III. (Docket No. 1). The indictment charged both Wells and Pegues with one count of conspiracy to distribute fifty grams or more of crack cocaine between September 5 and September 7, 2007 (Count 1) and two counts of distributing and possessing with the intent to distribute fifty grams or more of crack cocaine on September 5

and September 7, 2007 (Counts 2 and 3). (*Id.*). The indictment also charged Wells individually with carrying a firearm during a drug trafficking crime on September 5, 2007 (Count 4) and possessing this firearm as a convicted felon (Count 6). (*Id.*). Pegues was charged individually with one count of carrying a firearm during a drug trafficking crime on September 7, 2007 (Count 5). (*Id.*).

The charges resulted from two controlled sales of crack cocaine to an undercover agent by Wells and Pegues. (Presentence Investigation Report ("PSIR") at ¶¶ 7-8). On September 5, 2007, undercover agents effectuated a controlled purchase of two ounces of crack cocaine for $2,000 from Wells and Pegues. (*Id.* at ¶ 7). During the sale, the witness expressed his interest in purchasing handguns, and Wells showed the witness a black handgun that was tucked in his waistband. (*Id.*). Wells told the witness that he would locate a gun for the witness to purchase for $250. (*Id.*). Two days later, on September 7, 2007, the witness found Pegues and told him that the crack cocaine that he sold to the witness was less than two ounces. (*Id.* at ¶ 8). Pegues then asked the witness if he would like to purchase a firearm. (*Id.*). During this conversation, Wells arrived, and the three individuals got into the witness's vehicle. (*Id.*). Wells and Pegues offered to sell the witness one ounce of crack cocaine and a firearm for a total of $1,400. (*Id.*). During the transaction, Pegues showed the witness that he was carrying a gun. (*Id.*). The witness paid Wells and Pegues $1,400 for 23.2 grams of crack cocaine and a .40 caliber semiautomatic handgun. (*Id.*).

On December 21, 2009, Defendant pled guilty to Counts 1 and 4 of the Indictment pursuant to a written plea agreement with the Government. (Docket No. 88). In the plea agreement, the parties stipulated to the type and quantity of the controlled substance attributable to Defendant for the purposes of § 2D1.1 of the Sentencing Guidelines in the amount of more

than fifty but less than 150 grams of cocaine base in the form commonly known as crack, a Schedule II controlled substance. (*Id.* at ¶ C.4). This stipulation was not binding on the Court. (*Id.*). The plea agreement also detailed the penalties that may be imposed upon the Defendant by the Court under Counts 1 and 4. (*Id.* at ¶¶ C.1-C.2).

In addition to Defendant's guilty plea at Counts 1 and 4, the written plea agreement provides that "[h]e acknowledges his responsibility for the conduct charged in Counts 2, 3 and 6 of the Indictment at Criminal No. 08-68," shall voluntarily forfeit to the United States all property subject to forfeiture under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), shall pay a special assessment to the Clerk of Court, waives the right to seek post-conviction DNA testing of physical evidence and the right to preserve same, and waives former jeopardy or double jeopardy claims. (Docket No. 88 at ¶¶ A.1-A.7, B.1). Furthermore, the plea agreement states:

> Terrance Howard Wells waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. §1291 or 18 U.S.C. §3742, subject to the following exceptions:
>
> (a) If the United States appeals from the sentence, Terrance Howard Wells may take a direct appeal from the sentence.
>
> (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Terrance Howard Wells may take a direct appeal from the sentence.
>
> Terrance Howard Wells further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

(*Id.* at ¶ A.7). The plea agreement concludes with a statement that "[t]his letter sets forth the full and complete terms and conditions of the agreement between Terrance Howard Wells and the United States Attorney for the Western District of Pennsylvania, and there are no other agreements, promises, terms or conditions, express or implied." (*Id.* at 6). Additionally, in the

plea agreement, Defendant asserted:

> I have received this letter from my attorney, John A. Knorr, Esquire, have read it
> and discussed it with him, and I hereby accept it and acknowledge that it fully sets
> forth my agreement with the Office of the United States Attorney for the Western
> District of Pennsylvania. I affirm that there have been no additional promises or
> representations made to me by any agents or officials of the United States in
> connection with this matter.

(*Id.*). The agreement is executed by Defendant on December 21, 2009 and signed as witnessed

by: John A. Knorr, Esquire, Counsel for Terrance Howard Wells. (*Id.*).

A change-of-plea hearing was held before the undersigned on December 21, 2009. (*See*

Docket No. 87). During the hearing, the Court found Defendant competent to plead. (*Id.*). The

Government reviewed the charges against Defendant, the Court advised Defendant of his right to

trial, and Defendant indicated his understanding of the charges. (*Id.*). Thereafter, the Court

asked counsel and Defendant about the plea agreement as well as the appellate and post-

sentencing challenge waiver provision contained in the agreement. (*Id.*). The Government

through its counsel reviewed the terms of the plea agreement on the record, and Defendant

expressed his understanding and assent to the plea agreement, including that he waived his right

to appeal and to collaterally attack his sentence unless certain limited exceptions apply. (*Id.*).

The Court found that Defendant knowingly and voluntarily waived his rights and admitted the

plea agreement, which had been marked as Exhibit 1, into evidence. (*Id.*; *see also* Docket No.

88). The Court then asked Defendant about his understanding of the application of the

Sentencing Guidelines and various court decisions construing the Court's role in applying same

and advised Defendant of potential penalties. (Docket No. 87). Next, the Government

summarized the evidence against Defendant, and Defendant had no corrections or additions to

this summary. (*Id.*). Thereafter, Defendant expressed his wish to plead guilty, and the Court

accepted Defendant's change of plea and entered a Judgment of Guilt as to Counts 1 and 4 and acknowledgement of conduct at Counts 2, 3, and 6. (*Id.*). Counsel and Defendant signed the Change of Plea Form in open court. (*Id.*).

After Defendant's change-of-plea hearing, the Government moved for forfeiture of property as to Defendant, which the Court granted on January 29, 2010. (Docket Nos. 97, 98). Pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), Defendant was ordered to forfeit his rights in the Interarms Firestar Model .40 caliber semi-automatic pistol, serial number 2085262.[1] (Docket No. 97).

Defendant's sentencing was initially scheduled for April 22, 2010. (Docket No. 90). Given same, a PSIR was ordered to be filed on or before March 18, 2010. (*Id.*). Neither Defendant nor the Government had any objections to the PSIR, including the Probation Office's calculation of the advisory guideline range of 120 to 150 months' imprisonment, based on a total offense level of 27 and a criminal history category of V. (Docket Nos. 99, 100). Accordingly, the Court issued its Tentative Findings and Rulings on April 15, 2010, adopting this advisory guideline range and describing the other potential criminal penalties that Defendant faced. (Docket No. 105). Defendant then filed a motion to continue the sentencing, which this Court granted. (Docket Nos. 108, 109).

At the sentencing hearing on May 10, 2010, the Court first described the procedural history in the case. (Docket No. 118). After the oath was administered to Defendant, the Court then asked him questions regarding his review of the PSIR, Addendum, and Tentative Findings. (*Id.*). Defendant answered and indicated that he understood. (*Id.*). Once again, neither party presented

---

[1]    On April 15, 2010, the Government moved to amend the January 29, 2010 order of criminal forfeiture to include the description of the forfeited property. (Docket No. 103). The Court granted this motion on the same day and amended the forfeiture order accordingly. (Docket No. 104).

objections to the Presentence Report or the Addendum. (*Id.*). Thereafter, the Court adopted the facts set out in the PSIR and Addendum, except as otherwise set forth in the Court's Tentative Findings and Rulings. (*Id.*). The Court then adopted the Tentative Findings and Rulings as its Final Findings and Rulings on the facts and the Guidelines. (*Id.*). Defendant proceeded to offer evidence in the form of several character letters written on his behalf, as well as a letter written by Defendant himself, and the Court reviewed same and admitted them into evidence as Exhibit 1. (*Id.*). Counsel presented argument regarding aspects of the sentence, and Defendant declined to make a statement to the Court. (*Id.*). After considering the parties' arguments, the Court imposed a sentence of 180 months' imprisonment, consisting of 120 months at Count 1 and sixty months at Count 4, to be served consecutively. (Docket Nos. 118, 119). Defendant was also sentenced to five years supervised release, consisting of five years at Count 1 and five years at Count 4, said terms to run concurrently. (*Id.*). No fine was imposed, and Defendant was ordered to pay a $200.00 special assessment. (*Id.*). At the conclusion of sentencing, the Court advised Defendant of his appeal rights.[2] (*Id.*).

On January 6, 2011, the Government moved for final order of forfeiture as to Defendant for the Interarms Firestar model .40 caliber semi-automatic pistol, serial number 2085262. (Docket No. 141). The Court subsequently entered a final order of forfeiture. (Docket No. 142).

Defendant filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255 and a brief in support on May 12, 2011. (Docket Nos. 144, 145). He argues that "existing mitigating circumstances" support the imposition of a lesser sentence. (Docket No. 145 at 13). From the Court's review of Defendant's brief, these circumstances appear to be his "painful childhood experiences within the unwholesome and grossly dysfunctional 'home environment,'" the

---

[2] Co-defendant Pegues received the same sentence as Defendant. (*See* Docket Nos. 120, 121).

"extreme mental duress" that he suffered from particular Parole Officers "during the entire short period of time he was actively involved with 'dealing crack,'" and the "unconscious racism [that] can be found in the latent psyches of white Americans." (Docket No. 145 at 12-18). In his motion, Defendant also requests an evidentiary hearing so that he may prove the facts that he has alleged in his brief. (*Id.* at 17).

On May 13, 2011, the Court issued a Notice and Order setting forth a briefing schedule with respect to Defendant's motion. (Docket No. 146). In particular, the Court provided Defendant with three options:

> (1) you may withdraw your pending petition and subsequently file one new, all-inclusive § 2255 petition, which contains every ground for relief which you believe may entitle you to relief from the conviction and sentence you are seeking to challenge, provided that any new § 2255 petition is filed within the one-year statute of limitations; (2) *you may amend the § 2255 petition presently on file with the Court with any additional claims or materials in support of your pending claims which you want the Court to consider in ruling on your pending petition; however, if the amendment is not filed within 120 days of the date that the Court receives notice of your intention to amend, the Court will rule on the petition in the form in which it was filed;* or (3) you may choose to have the petition ruled on as filed.
>
> You must notify the Court in writing of your choice of one of these three options, *within thirty (30) days of the date of this Notice and Order*. If no written notification of withdrawal is received within thirty (30) days, the Court will proceed to decide the petition as filed.

(Docket No. 146) (emphasis added).

Defendant then submitted a Motion for Writs of Habeas Corpus ad testificandum to subpoena four witnesses that he describes as: (1) Tom Eidenmuller, District Director for Pennsylvania Adult Probation and Parole; (2) Tom Cox, Pennsylvania Parole Officer; (3) Tim McCutcheon, Pennsylvania Parole Officer; and (4) June Wells, Defendant's mother. (Docket

No. 148). The Court denied this motion on June 16, 2011, as no evidentiary hearing had been scheduled at that time. (Docket No. 149).

On June 15, 2011, or thirty-three days after the Court's Notice and Order was filed, the Court received a letter from Defendant indicating his desire to amend his motion. (Docket No. 147). Defendant dated his signature in the letter June 11, 2011, which is twenty-nine days after the Court's Notice. (*Id.*). The letter is postmarked on June 14, 2011, which is thirty-two days after the Court's Notice. (*See* Docket No. 147-1).

The Court received Defendant's amended arguments on September 28, 2011 in a letter postmarked September 27, 2011. (Docket Nos. 152, 152-1). The letter contains a "certificate of service," in which Defendant affirms that he served his letter on the Court and counsel for the Government on September 19, 2011. (*Id.* at 4). Said "certificate of service" is signed by a Notary Public. (*Id.*). The Court construes his amended arguments to invoke the application of the Fair Sentencing Act of 2010. (*Id.* at 1-2). Defendant also reiterates his entitlement to an evidentiary hearing. (*Id.* at 2-3).

After the Court granted two extensions of time, the Government filed its response in opposition to Defendant motion on January 26, 2012. (Docket No. 163).

Accordingly, the parties' positions are fully briefed and ripe for disposition.

## III. LEGAL STANDARD

### A. Timeliness

The prison mailbox rule applies to prisoners' submissions to the court with regard to a § 2255 motion. *See United States v. Vasquez-Alvarez*, Crim. A. No. 2009-cr-00563, 2012 U.S. Dist. LEXIS 28060, at *27 n.1 (E.D. Pa. Feb. 29, 2012). This rule "deems a motion to have been filed on the date the petitioner delivered his petition to prison officials in the mail." *Id.* (citing

*Burns v. Morton*, 134 F.3d 108, 113 3d Cir. 1997)); *accord United States v. Delgado*, 363 F. App'x 853, 854 n.1 (3d Cir. 2010) (citing *Houston v. Lack*, 287 U.S. 266, 176 (1988)).

## B. Basis for Section 2255 Motion

Defendant filed the instant motion challenging his sentence under 28 U.S.C. § 2255(a), which provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). As a result, a criminal defendant "is entitled to relief only if he can demonstrate that he is in custody in violation of federal law or the Constitution." *Hernandez v. United States*, Civ. A. No. 07-752, 2008 WL 3843510, at *2 (D.N.J. Aug. 14, 2008).

To vacate a defendant's sentence pursuant to § 2255, a district court must find "that . . . judgment was rendered, without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the [defendant] as to render the judgment vulnerable to collateral attack." *Garcia v. United States*, Criminal Action No. 93-536-03, Civil Action No. 97-2861, 2008 WL 1375571, 2008 U.S. Dist. LEXIS 29298, at *4 (D.N.J. Apr. 9, 2008) (internal quotation and citation omitted).

A defendant bears the burden of establishing his entitlement to § 2255 relief. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). In addition, because a defendant's § 2255 petition is a collateral attack on his sentence, he "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Bohn*, Criminal Action No.

92-61-02, 1999 WL 1067866, 1999 U.S. Dist. LEXIS 18522, at *7 (E.D. Pa. Nov. 9, 1999) (quoting *United States v. Frady*, 456 U.S. 152, 166, 102 S. Ct. 1584, 71 L.Ed.2d 816 (1982)). The court must construe *pro se* pleadings in a liberal manner. *See United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972)). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation." *United States v. Knight*, Crim. No. 98-3 E, 2009 WL 275596, 2009 U.S. Dist. LEXIS 7959, at *39 (W.D. Pa. Feb. 4, 2009) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

### C.    Evidentiary Hearing

Finally, a district court must order an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992) (stating that the district court generally orders an evidentiary hearing in a federal habeas case if a defendant's § 2255 allegations raise an issue of material fact). If there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," then the court may decide the motion without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980). If a hearing is not held, then the district judge must accept the movant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't. of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). In the instant case, the Court resolves the pending motion without holding a hearing because, for the reasons set forth *infra*, assuming Defendant's allegations as true, he is not entitled to the relief requested in his § 2255 petition.

## IV.   DISCUSSION

Construed liberally, Defendant raises two primary arguments in his *pro se* filings under §
2255: (1) that his sentence should be vacated due to mitigating circumstances; and (2) that the
application of the FSA supports a reduction in his term of imprisonment.  (Docket Nos. 145,
152).  In response, the Government maintains that: (1) Defendant waived his right to file a
motion to vacate under 28 U.S.C. § 2255 in his written plea agreement; (2) he did not meet the
120 day deadline to amend his arguments; (3) even if his amended argument is deemed timely,
his claims fail as a matter of law; (4) and he is not entitled to an evidentiary hearing.  (Docket
No. 163).  For the reasons that follow, the Court agrees with the Government that the undisputed
facts of record demonstrate that the collateral attack waiver in Defendant's plea agreement must
be enforced.  Although Defendant did not meet the thirty day deadline to provide notice to the
Court of his intention to amend his arguments, the Court further agrees with the Government that
Defendant's amended arguments, wherein he asserts application of the FSA is warranted, fail as
a matter of law.  Finally, because Defendant waived his right to file the present motion to vacate
and because he presents no arguments that raise an issue of material fact or a legally cognizable
claim, an evidentiary hearing is not necessary in this case.  *See Biberfeld*, 957 F.2d at 102;
*Costanzo*, 625 F.2d at 470.

### A.   Timeliness of Defendant's Submissions to the Court

At the outset, the Court will address the Government's objection to the timeliness of
Defendant's amended arguments.  (Docket No. 163 at 7).  The Government contends that
Defendant's amended arguments (Docket No. 152) are postmarked September 27, 2011, which is
more than 120 days after the Court's Notice and Order on May 13, 2011 (Docket No. 146).
Although this is true, the Court's Notice and Order instructed Defendant to file his amendment

"within 120 days of the date that the Court receives *notice of your intention to amend*." (*Id.*) (emphasis added). Therefore, the date that determines whether Defendant's amended arguments are timely is the date that the Court received Defendant's notice of his intention to amend his arguments, not the date of the Court's Notice and Order.

According to the Court's Notice and Order, Defendant must have advised the Court of his intention to amend "within thirty (30) days of the date of this Notice and Order." (*Id.*). As was described earlier, the Court received Defendant's letter indicating his intention to amend his arguments on June 15, 2011. (*See* Docket No. 147). Defendant dated his signature June 11, 2011. (*See id.*). Said letter was postmarked June 14, 2011. (*See* Docket No. 147-1). Additionally, although Defendant's amended arguments were submitted in a letter postmarked September 27, 2011 (Docket No. 152-1), the letter contains a notarized affirmation stating that he filed the letter on September 19, 2011 (Docket No. 152 at 4). The amended arguments were filed with the Court on September 28, 2011. (*See id.*).

Regardless of what dates the Court deems that Defendant filed the notice of his intention to amend his arguments and his actual amended arguments, they all satisfy the 120-day deadline imposed by the Court.[3] Therefore, application of the prison mailbox rule is unnecessary to the Court's determination of timeliness of Defendant's amended arguments.

The prison mailbox rule is necessary, however, to determine the timeliness of Defendant's notice of his intention to amend. Although not raised by the Government, the Court acknowledges that the signature date of Defendant's letter stating his desire to amend his arguments is within the thirty-day deadline imposed by the Court, but the date the Court received

---

[3]      Even using the earliest possible date for the notice of Defendant's intention to amend his arguments, June 11, 2011, and the latest possible date for the Defendant's amended arguments, September 28, 2011, Defendant meets the 120-day deadline. (*See* Docket Nos. 146, 147, 152). There are 109 days between these two dates.

the letter and the letter's postmark date are both beyond the thirty-day deadline. (*See* Docket Nos. 147, 147-1).

If the Court applies the prison mail box rule to Defendant's submission, then it is deemed "to have been filed on the date the petitioner delivered his petition to prison officials in the mail." *Vasquez-Alvarez*, 2012 U.S. Dist. LEXIS 28060, at *27 n.1 (citation omitted); *accord Delgado*, 363 F. App'x at 854 n.1 (citation omitted). It is not clear, however, when Defendant delivered his letter containing his intention to amend his arguments to prison officials. Defendant dated his signature on the letter itself as June 11, 2011, which is twenty-nine days after the Court's Notice and thus within the thirty-day limit set by the Court. (*See* Docket No. 147). Consequently, if the Court finds June 11, 2011 to be the date of Defendant's filing through application of the prison mailbox rule, then Defendant's notice of his intention to amend his arguments is timely. *See United States v. Perez-Diaz*, CR-02-280, 2006 WL 2405142, at *1 n.2 (M.D. Pa. Aug. 18, 2006) (finding that the signature date on the defendant's § 2255 motion created a presumption that the motion was filed on that date); *United States v. Marrero*, Crim. No. 00-488-2, 2006 WL 2473664, at *4 n.4 (E.D. Pa. Aug. 18, 2006) (same); *but see Vasquez-Alvarez*, 2012 U.S. Dist. LEXIS 28060, at *27 n.1 (finding that the prison mailbox rule did not create an inference that the signature date should be regarded as the date of filing when a three month, unexplained elapse in time occurred between the signature date and the date of actual filing with the court).

Because Defendant's signature date, the postmark date, and the Court's date of receipt are very close together, the Court will construe his notice of intention to amend as delivered to prison officials, and thus deemed filed, on June 11, 2011. *See Vasquez-Alvarez*, 2012 U.S. Dist. LEXIS 28060, at *27 n.1; *Perez-Diaz*, 2006 WL 2405142, at *1 n.2; *Marrero*, 2006 WL

2473664, at *4 n.4.   Nonetheless, for the reasons that follow, Defendant's amended arguments are without merit.

## B.      Collateral Attack Waiver

Turning to the collateral attack waiver contained in Defendant's plea agreement, it is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver."   *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted). Furthermore, defendants may effectively waive their right to file a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 in a plea agreement with the Government.  *Mabry*, 536 F.3d at 241; *see also United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) ("[t]he ability to waive statutory rights . . . logically flows from the ability to waive constitutional rights."). The district court's determination of whether the waiver is effective is a threshold issue and, if the waiver is effective, a criminal defendant is jurisdictionally barred from pursuing the habeas petition.  *Mabry*, 536 F.3d at 242.  To determine whether a waiver is valid, the court "specifically examin[es] the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice."  *Id*. at 237.  A criminal defendant has the initial "burden of presenting an argument that would render his waiver unknowing or involuntary," but the district court "has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it."  *Mabry*, 536 F.3d at 237-38 (citing *Khattak*, 273 F.3d at 563).

Defendant provides no coherent argument in his motion or amended argument to support a finding that he entered into the plea agreement unknowingly or involuntarily.  (*See* Docket

14

Nos. 145, 152). It appears as though Defendant inserted a boilerplate heading in his brief, stating that his "[c]onviction obtained by plea of guilty which was unlawfully in-induced [sic] or not made voluntarily or with understanding of the nature of the charge and consequences of the plea." (Docket No. 145 at 11). Under this heading, however, Defendant offers an extensive but irrelevant reflection on his status as an "At-Risk Youthful African American male" and his upbringing in an "un-wholesome [sic] and grossly dysfunctional 'home environment.'" (*Id.* at 11-13). It is unclear how this narrative illustrates that his plea was either unknowing or involuntary. (*See id.* at 11-13). Defendant offers no additional argument, or any description that can be construed as an argument, to support a finding that his plea is invalid. (*See id.*, Docket No. 152).

In addition, the Court notes that Defendant has earned his GED, which demonstrates that he was able to read and understand the written plea agreement as well as comprehend the Court's explanation of the agreement and its waiver provisions during the change-of-plea hearing. (*See* PSIR at ¶ 65). Defendant also has significant prior experience with the criminal justice system and thus has familiarity with courtroom proceedings. (*See id.* at ¶¶ 25-50). Given these factors, Defendant had the ability to knowingly and voluntarily plead guilty and waive his rights.

Moreover, the Court finds that the language in Defendant's written plea agreement with the Government is clear and unequivocal. (*See* Docket No. 88). The agreement provides, in relevant part, that "Terrance Howard Wells further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." (*Id.* at ¶ A.7). Defendant and his counsel executed the plea agreement and expressly assented to these terms. (*Id.* at 6).

The plea colloquy was conducted in accordance with Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure, which states:

> Before the court accepts a plea of guilty . . . , the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

FED. R. CRIM. P. 11(b)(1)(N); see also *United States v. Corso*, 549 F.3d 921, 929-31 (3d Cir. 2008) (holding that the district court erred by not directly questioning the defendant about the waivers in a plea agreement); *United States v. Goodson*, 544 F.3d 529, 540-41 (3d Cir. 2007) (same).

At the change-of-plea hearing on December 21, 2009, Defendant articulated, *inter alia*, his understanding of the charges against him, the potential penalties, and the application of the Sentencing Guidelines. (*See* Docket No. 87). The Government explained the terms of the plea agreement, and Defendant expressly affirmed his understanding, his assent to the plea agreement, and his wish to plead guilty to Counts 1 and 4 of the Indictment. (*Id.*). The Court asked Defendant about the waiver provision contained in his plea agreement, and he assented that he understood that he was waiving his rights. (*Id.*). Additionally, the Court explained to Defendant his rights, found that he knowingly and voluntarily waived his rights as set forth in the plea agreement, and found him competent to plead. (*Id.*).

In sum, the evidence of record clearly demonstrates that Defendant's waiver of the right to file the instant §2255 motion was knowingly and voluntarily made. *See Mabry*, 536 F.3d at 241.

## C.    Miscarriage of Justice

To determine whether a waiver is valid, the Court must also consider "whether enforcement [of the waiver] would work a miscarriage of justice." *Mabry*, 536 F.3d at 237.  In so doing, the Court applies "a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced," and considers "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'"  *Id.* at 242-43 (citation omitted).  The United States Court of Appeals for the Third Circuit has identified some specific examples that may constitute a miscarriage of justice, including if enforcing a collateral attack waiver would bar a criminal defendant's appeal on grounds expressly preserved in the plea agreement.  *Id.* at 243 (citing *United States v. Shedrick*, 493 F.3d 292, 303 (3d Cir. 2007); *United States v. Wilson*, 429 F.3d 455 (3d Cir. 2005)); *see also United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008).  Despite providing some examples in which a miscarriage of justice could potentially arise, the court of appeals "declined to identify a list of specific circumstances which would give rise to, or constitute, a miscarriage of justice." *Mabry*, 536 F.3d at 243.  The court of appeals also declined to precisely define "miscarriage of justice," and instead stated that "[t]he phrase, on its own, connotes something grave and out of the ordinary."  *Id.* at 239; *see also United States v. Calabretta*, 385 F. App'x 130, 131 (3d Cir. 2010) (noting that the court of appeals has not precisely defined the phrase "miscarriage of justice").

When Defendant entered into his written plea agreement, he expressly waived his right to file a § 2255 motion to vacate his sentence.  (*See* Docket No. 88 at 3).  He also waived his right to take a direct appeal from his conviction or sentence unless the Government first takes a direct

appeal from the sentence or the sentence exceeds the applicable statutory limits or guideline range. (*Id.* at 2-3). None of these exceptions are applicable here, as the Court sentenced Defendant to the applicable mandatory minimum sentences imposed by statute at Counts 1 and 4. (*See* Docket Nos. 118, 119).

Like the defendant in *Mabry*, Defendant has "not identified any nonfrivolous ground, not covered by the waiver, for a direct appeal or collateral attack" in his motion. *Mabry*, 536 F.3d at 243. Defendant argues that "mitigating circumstances" exist to warrant the grant of his § 2255 motion. (*See* Docket Nos. 145, 152). As the Court has already described, these circumstances include Defendant's unhappy upbringing,[4] his alleged negative interactions with certain parole officers, and the racism that he claims is "patently evident in the crack cocaine statutes." (Docket No. 145 at 12-18; *see also* Docket No. 152). Even in light of these arguments, enforcement of the waiver in Defendant's plea agreement would not result in a miscarriage of justice. Any purported "mitigating circumstances" have no effect on the imposition of the mandatory minimum sentence of ten years pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) at Count 1 and the mandatory consecutive term of five years pursuant to 18 U.S.C. § 924(c)(1)(A)(i) at Count 4, for a total sentence of 180 months. *See United States v. Diaz*, 592 F.3d 467, 469 (3d Cir. 2010) (explaining that a violation of 18 U.S.C. § 924(c)(1)(A)(i) carries a mandatory minimum term of five years that "run[s] consecutively to the term imposed of the underlying drug offense"); *United States v. Gunter*, 462 F.3d 237, 248 (3d Cir. 2006) (stating, "the statutory minimum drug trafficking penalty in 21 U.S.C. § 841(b) . . . is mandatory"). These sentences were unequivocally set forth in the negotiated plea agreement. (*See* Docket No. 88 at ¶¶ C.1-C.2).

---

[4]    *See* discussion *infra*.

Furthermore, consideration of any testimony by the witnesses cited by Defendant is unnecessary. (*See* Docket No. 152 at 2-3). Any alleged "maltreatment and racist ethnic intimation that was life threatening by the two Pennsylvania Parole Officers" has no effect on the imposition of Defendant's sentence. (*Id.* at 3). Therefore, to the extent that Defendant intends for Tom Eidenmuller, Tim Cox, and Tim McCutcheon to testify at a requested evidentiary hearing regarding their treatment of Defendant, such testimony is not relevant to the Court's determination of the instant motion. Regarding the proposed testimony of Defendant's mother June Wells, the Court has already reviewed character letters from Ms. Wells and a number of other individuals and considered similar arguments at Defendant's sentencing. (*See* Docket Nos. 118, 118-2). Even with this information, the Court imposed the statutory mandatory minimum sentence. (Docket Nos. 118, 119). The Court, therefore, agrees with the Government that Defendant has not alleged any miscarriage of justice and that the enforcement of the waiver provision of his plea agreement is warranted here.[5] (Docket No. 163 at 6).

Additionally, there is no miscarriage of justice under the Fair Sentencing Act of 2010, as Defendant claims. (Docket No. 152). In Defendant's amended arguments, he largely contends that the Court should retroactively apply the FSA to reduce his sentence. (*Id.* at 1-2). The Court agrees with the Government that this claim lacks merit because Defendant was sentenced *before* the FSA went into effect and he was sentenced to the statutory mandatory minimum penalties. (Docket No. 163 at 7). Accordingly, the FSA is not applicable to the instant matter, and the

---

[5]     The Court also recognizes that Defendant's co-defendant, Robert L. Pegues III, entered his plea of guilty on the same day as Defendant: December 21, 2009. (*See* Docket No. 91). Pegues's plea agreement is almost identical to that of Defendant, though Pegues pled guilty to Counts 1 and 5 of the Indictment. (*See id.*, Docket No. 92). In Pegues's plea agreement, he also waived his right to file a § 2255 motion to vacate and right to file a direct appeal from his conviction or sentence unless certain exceptions apply. (Docket No. 92 at ¶ 7). On June 9, 2010, Pegues appealed his sentence. (Docket No. 131). The Court of Appeals subsequently enforced Pegues's appellate waiver provision in the plea agreement between the parties and dismissed Pegues's appeal on the basis that he knowingly and voluntarily waived the right to appeal his sentence. (Docket No. 143).

Court lacks discretion to reduce Defendant's sentence as appears to request. (*See* Docket No. 152).

The FSA was enacted on August 3, 2010 and reduced the statutory penalties for certain crack cocaine offenses. *See* Fair Sentencing Act of 2010, 21 U.S.C. § 841 (2010). If a defendant's criminal offense and sentencing *both* occurred *prior* to the enactment of the FSA, then he or she cannot receive the benefit of this statute. *United States v. Reevey*, 631 F.3d 110, 114-115 (3d Cir. 2010). If the defendant's conduct occurred *before* the enactment of the FSA, but he or she was sentenced *after* the FSA's enactment, then the FSA would apply. *United States v. Dixon*, 648 F.3d 195, 203 (3d Cir. 2011). Moreover, any possible change in the applicable advisory guidelines under the FSA has no retroactive effect on the statutory mandatory minimum sentence. *See id.* at 198 n.1; *see also United States v. Surratt*, No. 10-2303, 2011 WL 5925306, 2011 U.S. App. LEXIS 23829, at *4 (3d Cir. Nov. 29, 2011) (stating that "any potential change to [the defendant's] advisory guideline range resulting from the [FSA] does not alter our decision because the Act's changes to mandatory minimum crack penalties do not apply retroactively").

As previously explained, Defendant was sentenced to the mandatory statutory minimum of ten years at Count 1. (Docket Nos. 118, 119). The FSA has no effect on Defendant's sentence because he was sentenced *before* the FSA went into effect and its provisions cannot be applied retroactively. *See Reevey*, 631 F.3d at 114-115. To that end, Defendant remains subject to the mandatory minimum provisions that were in effect at the time of his sentencing.

Defendant was also sentenced to five years at Count 4, to be served consecutively, for a total sentence of 180 months. (Docket Nos. 118, 119). The Court agrees with the Government

that it had no discretion to impose said terms concurrently.  *See* 18 U.S.C. §§ 3553(e), 3553(f); *see also Diaz*, 592 F.3d at 469.

## V.    CERTIFICATE OF APPEALABILITY

As Defendant has waived his right to file the present motion, and the Court has declined to consider the merits of same, he has failed to demonstrate a "substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2), and the Court finds that he is not entitled to a certificate of appealability on any of the claims asserted in his motion.

## VI.   CONCLUSION

Based on the foregoing, Defendant's motion to vacate [144] is DENIED.  An appropriate Order follows.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   March 29, 2012

cc/ecf: All counsel of record

cc:     Terrance Howard Wells
        GM 9319
        SCI Forest
        Marienville, PA 16239-0307